Graham, Judge,
delivered the opinion of the court:
The plaintiff made his returns for income taxes for the years 1917 and 1919, and paid the same according to the taxable amounts shown therein. The Commissioner of Internal Revenue after a review of the returns increased plaintiff’s assessment in certain instances and demanded and received from him payment of additional taxes. The plaintiff claimed that the additional assessment was illegal, paid it under protest, and petitioned for a refund, which was denied. Thereupon he brought this suit.
The questions in the case are whether the dividends declared and received by the plaintiff in 1917 and 1919 were assessable at rates for the years in which they were received or at rates for other years, or whether they were assessable at all.
There is also involved the question whether the tax on “ tax-free covenant ” bonds paid by the obligor at the source was income for which plaintiff as holder of the bonds was liable.
*440 The rate of taxation for the year 1917 and subsequent years was higher than for the years which preceded 1917. The purpose of the statutes for the year 1917 and following was to make war profits pay higher war taxes. Thus, a tax' assessed under the statute controlling the year 1916 would be less than the tax for the year 1917.
Ás we view this case all of the questions involved, except the one relating to “ tax-free covenant ” bonds, are ruled by the case of Edwards v. Douglas, 269 U. S. 204, decided November 23,1925. Among other things it was held in that case that the special aim of the act of 1917 was to make war-profits pay high war taxes and “to make a dividend, in whatever year paid, bear the tax rate of the year in which the profits, of which it was a distribution, had been earned, and for this purpose to treat as a unit the profits of the whole taxable year.” ' The Edwairds case was reviewed in the case of Mason v. Routzahn, decided by the Supreme Court November 21, 1927, 275 U. S. 175. In the. latter case the Circuit Court of Appeals held that if the net profits of the whole year prove sufficient to meet all dividends paid within it, these must be deemed to have been paid from such profits, even if. it affirmatively appears that none had been earned before the date when the latest dividend was paid. This holding was reversed by the Supreme Court in the case just cited, the court saying:
“ The Solicitor General concedes that Edwards v. Douglas does not so decide; that the case is authority only for the proposition that a pro rata share of the entire year’s earnings may be treated as approximating the actual earnings for the fraction of the year prior to the payment of the dividend in the absence of circumstances showing that there were no earnings actually accumulated during the fractional period; that the amount actually available for payment of dividends out of the current year’s earnings prior to the date of payment may always be shown; that such had been the practice of the Treasury Department from the time the revenue act of 1917 took effect until the date of the Court of Appeals’ decision; and that this rule was embodied in its regulations.
“We see no good reason for disturbing the long-settled practice of the Treasury Department. Its contemporary interpretation is consistent with the language of the act, and *441 its practice was, in susbtanee, embodied in the revenue act of 1918, February 24, 1919, c. 18, sec. 201 (e), 40 Stat. 1057, 1060. We conclude that the Circuit Court of Appeals placed an erroneous construction on sec. 31 (b).”
The Edwards case also held that in determining the applicable tax rate the court would neither accept any declaration of the corporation as to the profits of what year were being distributed, nor adopt the earliest year (since March, 1913) of which there were accumulated profits available for distribution. The applicable provision of the statute is section 31 (b) of the revenue act of 1917, 40 Stat. 300, 338, which was an addition to the act of 1916 and provides as follows:
“Any distribution made to the shareholders * * * of a corporation * * * in the year nineteen hundred and seventeen, or subsequent tax years, shall be deemed to have been made from the most recently accumulated undivided profits or sui'plus, and shall constitute a part of the annual income of the distributee for the year in which received, and shall be taxed to the distributee at the rates prescribed by law for the years in which such profits or surplus were accumulated by the corporation, * * * but nothing herein shall be construed as taxing any earnings or profits accrued prior to March first, nineteen hundred and thirteen * *
Construing this act in the Edwards case the court held that the language “ most recently accumulated undivided profits ” applies to current earnings, and that the dividends must be deemed to have been paid from the net profits that appear to have been earned prior to the date of the payment of the dividend, or if not so appearing, a pro rata part of such earnings on a.per diem basis for the number of days preceding the payment of the dividend, and are subject to the income-tax rates of that year, although when the distribution was made there were other funds adequate for the purpose carried in the surplus account of the corporation as made up to the end of the preceding fiscal year. It also defines the term “ surplus ” as employed in corporate finance and accounting as an account on the books representing the net assets of the corporation in excess of all liabilities, including capital stock, and states that the word “ surplus ” as *442 used in the above-quoted provision of the act means that part of the surplus which was derived from profits which at the close of earlier annual accounting periods were carried into the surplus account as undistributed profits.
It does not seem necessary to review the facts in detail. They are fully set out in the findings. Suffice it to say that from one corporation, the E. Richard Meinig Co., plaintiff received a dividend of $84,000, declared on January 8, 1911, and paid to and received by him in seven equal installments on February 12, March 2, March 19, March 31, May 4, May 16, and June 18, 1917. This dividend was for 700 per cent and was ordered by the corporation to be paid “ out of the net earnings shown for the year 1916,” and the plaintiff contends that it was actually paid out of the net earnings accumulated by said corporation in 1916. The plaintiff in making his tax return accounted for this dividend at the rate of taxation applicable to the year 1916. The Treasury Department decided that he was taxable on this dividend at the rate fixed for the year 1917. Plaintiff filed a claim for refund in connection with the assessment on this dividend, that of the Nolde & Hor'st Company about to be discussed, and on tax-free covenant bonds which on June 17, 1924, was refused. The Commissioner of Internal Revenue determined that $19,116.43 of said dividend of $84,000 on a pro rata per diem basis, was earned by the said corporation in the year 1917 and taxable at the 1917 rate and the balance at the 1916 rate. The facts as found show that the income of the corporation for the year 1917 was $277,818.82, and that it paid out in dividends $350,000, of which plaintiff received $84,000. Of this latter1 sum, by prorating, $30,872.24 was earned prior to the time the dividend was paid, and under the decision in the case of Mason v. Boutzahn, supra, should be allocated to the year 1917 and taxed according to the rate of that year. As only $19,116.43 was taxed at that rate, plaintiff was not overassessed and is not entitled to a refund.
In the case of the 1917 dividend from the Nolde & Horst Company the Commissioner of Internal Revenue assessed the plaintiff on $71,066.94 of the $200,000 dividends received by plaintiff in 1917, at the 1917 rate, and assessed him on *443 the balance at the 1916 rate. As found by the court (Finding IX), the earnings of the Nolde & Horst Company for 1911 were $1,133,450.90, and it distributed in dividends during that year, including the dividends to the plaintiff, $500,000; so that the earnings for 1917 were more than sufficient to pay the dividends, and under the above ruling in the case of Mason v. Routzahn, the pro rata part of the plaintiff’s dividend earned prior to the payment of the same amounted to $127,012.68, which was subject to assessment on the basis of the 1917 rate, and as only $71,066.94 was taxed at that rate by the commissioner, plaintiff was not overassessed and is entitled as to this item to no refund.
The plaintiff in making his return returned under paragraph G, “ Interest on tax-free covenant bonds (on which one normal tax of 2% was withheld at source),” the sum of $37,793.11. This was included in his return as part of the amount, subject to the normal tax of 2%, and under item 31 of his return, “Less tax withheld on tax-free covenant bonds (2% of net total of Item G),” $755.86 was deducted from his tax. The Commissioner of Internal Kevenue held that the amount paid by the corporation obligor for the bondholder pursuant to a “ tax-free covenant ” clause contained in the bond was in the nature of additional income to the bondholder and disallowed the last-named sum. The plaintiff is here asking for a refund of the tax on said sum of $755.86.
We are of opinion that this tax paid by the obligor corporation was not “ gain ” or “ profit ” from sources named in the statute and was not “ received ” by the taxpayer. Eisner v. Macomber, 252 U. S. 189, 207. It is not property and the holder of the bond could not recover it in an action at law against the obligor. Nor is it payable to the holder. See Dufy v. Pitney, 2 Fed. (2d ser.) 230, where the question is very fully and satisfactorily discussed.
As to this item the plaintiff is entitled to a refund of the tax levied on the said sum of $755.86.
We come now to the second branch of this case, which involves assessments in connection with the plaintiff’s income for the year 1919. It may be stated that the rates of *444 taxation under the revenue acts of 1918 and 1919 are the same. This branch of the case involves two separate dividends received by the plaintiff during 1919 from the Nolde & Horst Company and from the Heading Brewing Company, corporations.
Taking up the Nolde & Horst Company dividend first, the facts are, briefly, as follows: On February 21, 1919, the Nolde & Horst Company declared a stock dividend (Finding XIII) of 900% on its capital stock of $250,000 and issued thereon additional' stock in the sum of $2,250,000, which was distributed pro rata among the stockholders on that date. The plaintiff received 9,000 shares thereof, being his pro rata share of the distribution. Having thus increased its capital to the sum of $2,500,000 the said company on February 28, 1919, declared and ordered paid as of March 6, 1919, on which date it was paid, a dividend of 20%, or $500,000, on its new capital of $2,500,000 (Finding XIV). Plaintiff received on March 6, 1919, $200,000 in cash as his part of the dividend.
It is unnecessary to go into a discussion of the plaintiff’s claims further than to state that the directors of the company in declaring the 20% cash dividend declared it to be payable from surplus or undivided profits accumulated during certain years prior to March 1, 1913, and as earnings prior to that date were, under the act, nontaxable, claimed this dividend was tax free. The directors also declared the above stock dividend of 900% to be payable out of the earnings from March 1,1913, to the date of declaration, February 21, 1919. The Edwards case has held that the directors of a corporation can not regulate out of what earnings a tax shall be paid. The findings show (Finding XVIII) that on February 21, 1919, after the payment of the stock dividend, there was an available surplus of $502,845.27, including the estimated profits for January and February, 1919. Adopting the principle of the Edwards case and treating this as a distribution “ deemed to have been made from the most .recently accumulated undivided profits or surplus,” as the statute provides, the “ distribution made ” being taken to have been made when the dividend was paid, March 6, 1919 (Mason v. Routzahn, supra), there appears h> have been *445 enough surplus for the year 1919 and the years immediately preceding it out of which said dividend of $500,000 must be taken to have been paid, and consequently the rates of taxation for 1918 and 1919 are applicable. The plaintiff was assessed on this basis by the commissioner. It thus appears that as to this dividend the plaintiff was properly assessed and is not entitled to a refund.
We shall now consider the Reading Brewing Company dividend. During 1919 plaintiff received from that company a cash dividend of $90,000. The record is quite unsatisfactory as to this dividend. The defendant closed its case without introducing any evidence on any of the items here involved, and the findings requested are inadequate.
The plaintiff’s contention seems to be that the $90,000 received by him as his share of the dividend in this case should have been allocated approximately as follows: 55% as paid out of dividends accumulated by the corporation subsequent to the 1st of March, 1913, and 45% to earnings accumulated prior to that date, and that the latter under the statute is exempt from taxation. He claims that more than 55% was allocated to the earnings accumulated after March 1, 1913, under the assessment of the Commissioner of Internal Revenue and subjected to taxation, and to the extent that this assessment exceeded 55% he is entitled to a refund. There is no proof of what amount was allocated to the earnings of each of these periods by the commissioner, and we stop here and conclude that the plaintiff having failed to show any illegal act by the commissioner is not entitled to recover. As the basis for the commissioner’s calculation has not been proved, his action in levying the additional assessment as far as it affected this dividend must be sustained, and as to it we hold the plaintiff is not entitled to a refund. It may be well briefly to .sum up our conclusions.
As to the reassessment on plaintiff’s return for 1919 he is mot entitled to a refund; as to the reassessment on his return for 1917 he is only entitled to a refund on the tax levied upon $755.86 (Finding Y), the amount paid by the obligor corporation and withheld at the source from the interest due the plaintiff on tax-free covenant bonds owned by him, *446 which the commissioner held was in the nature of additional income. As it does not appear what amount was assessed on this sum and paid by the plaintiff, it is not possible to render a judgment for any sum.
The petition should be dismissed, and it is so ordered.
■Moss, Judge, and Booth, Judge, concur.